IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| OUTDOOR AMUSEMENT BUSINESS ASSOCIATION, INC.  *et al.*,<br>    *Plaintiffs*, | |
| *v.* | Civil Action No. ELH-16-1015 |
| DEPARTMENT OF HOMELAND SECURITY *et al.*,<br>    *Defendants*. | |

## MEMORANDUM OPINION

This Memorandum Opinion resolves a motion to supplement the administrative record in connection with a suit challenging, *inter alia*, the authority of two federal departments — the Department of Labor and the Department of Homeland Security — to issue jointly certain regulations pertaining to the H-2B visa program (the "Program").  The Program governs the temporary employment of nonimmigrant aliens.

Plaintiffs are trade associations whose members rely on the Program to obtain workers, as well as business entities that utilize the Program.  ECF 44, ¶¶ 12-17.  In particular, they are Outdoor Amusement Business Association, Inc.; Maryland State Showmen's Association, Inc.; The Small and Seasonal Business Legal Center; Lasting Impressions Landscape Contractors, Inc.; Three Seasons Landscape Contracting Services, Inc.; and New Castle Lawn & Landscape, Inc.  They have sued the following defendants: the Department of Homeland Security ("DHS"); the United States Citizenship & Immigration Services ("USCIS"), a component agency of DHS; the Department of Labor ("DOL"); the Employment & Training Administration ("ETA"), a component agency of DOL; and the Wage & Hour Division ("WHD"), another component of DOL.

The Second Amended Complaint (ECF 44, "SAC"), filed on July 5, 2016, is the operative complaint.  In the SAC, plaintiffs outline the purpose of the Program, as follows, *id.*, ¶ 26:

> Since 1952, the purpose of the temporary employment H visas, including the H-2B program, has been to alleviate U.S. labor shortages for temporary work and provide nonimmigrant alien labor to fill those temporary or seasonal positions. The H-2B program protects the interests of both U.S. non-agricultural workers and employers, as well as the U.S. economy as a whole, through the preservation of jobs, work opportunities, and employers in the United States. The H-2B program is a legally-authorized source of employees for difficult-to-fill temporary positions, and supports the employment of countless other U.S. workers whose jobs rely on the temporary work performed by foreign workers.

The SAC, which is over 40 pages in length, contains six counts.  In Count I, plaintiffs assert that certain rules and regulations, discussed *infra*, exceed defendants' statutory authority, citing 5 U.S.C. §§ 558 and 706(2)(C).  Count II challenges the disputed regulations as arbitrary and capricious, citing 5 U.S.C. § 706(2)(A).  In Count III, plaintiffs assert that the regulations are unconstitutional and violate 5 U.S.C. § 706(2)(B).  Count IV is titled "Compulsion of Agency Action Unlawfully Withheld."  It is predicated on 5 U.S.C. § 706(1).  Count V is titled "Mandamus," pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the All Writs Act, 28 U.S.C. § 1651.  Finally, Count VI seeks a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

Defendants submitted notice of the filing of the administrative record, which consists of almost 3,800 pages.  ECF 46.[1]  Thereafter, defendants filed a "Notice of Filing of Corrected Certified Index" (ECF 53), containing three corrections.  Plaintiffs subsequently filed a "Motion To Strike And Correct Record Certification, Motion To Complete And Supplement The Record, And Motion For Discovery" (ECF 60), supported by an amended memorandum of law (ECF 61-

---

[1] The administrative record is available in paper format and on a compact disc.

1) (collectively, "Motion" or "Motion to Supplement"), and numerous exhibits. ECF 60-2 to ECF 60-19; ECF 61-2; ECF 61-4.[2] Defendants oppose the Motion (ECF 69, "Opposition"), supported by exhibits, docketed collectively at ECF 69-1. Plaintiffs have replied (ECF 73, "Reply"), supported by an exhibit. ECF 70-1.[3]

No hearing is necessary to resolve the Motion to Supplement. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.    Factual and Procedural Summary[4]

### A.  H-2B Visa Program

In 1952, as part of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, "Congress created the nonimmigrant H-2 visa category for temporary agricultural and non-agricultural employment that did not require advanced education, skills, or training." ECF 44, ¶ 25. Thereafter, the Immigration Reform and Control Act of 1986 "redesignated the extant H-2 classification as the nonagricultural H-2B visa category, and moved agricultural labor into a newly-created H-2A category." *Id.* The H-2B visa program permits U.S. employers to recruit

---

[2] The memorandum of law was initially docketed at ECF 60-1, but it was subsequently amended. *See* ECF 61; ECF 62. I note that the memorandum exceeds the 35-page limit imposed by Local Rule 105.3. Plaintiffs are reminded that they must seek the Court's permission if they wish to submit a filing that exceeds the page limitations set by the local rules.

[3] On January 20, 2017, nearly ten months after the suit was filed, Margharita Kuri; Timothy King; Andrew Mitschell; Henry Wojdylo; Ronald Nyenhuis; Shirley Harmon; Antonio Rivera Martinez; and Comité de Apoyo a los Trabajadores Agrícolas; Pineros y Campesinos Unidos del Noroeste; and Northwest Forest Workers Center (collectively, "Movants"), filed a motion to intervene as defendants (ECF 74, "Motion to Intervene"). Movants are U.S. workers who allegedly compete with H-2B visa workers for employment, and groups representing U.S. workers who allegedly compete with H-2B workers for employment. ECF 74 at 1. By Memorandum Opinion (ECF 82) and Order (ECF 83) of June 26, 2017, I denied the Motion to Intervene, but granted amicus curiae status to the movants.

[4] For the purposes of this Memorandum Opinion, it is unnecessary to review the factual allegations in detail.

and hire foreign workers to fill temporary unskilled, non-agricultural positions for which domestic workers cannot be located. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b); *La. Forestry Ass'n, Inc. v. Sec'y of Labor*, 745 F.3d 653, 658 (3d Cir. 2014).

An H-2B employee is defined as a nonimmigrant alien "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country…." 8 U.S.C. § 1101 (a)(15)(H)(ii)(b). The INA charges DHS with determining, "upon petition of the importing employer," whether to grant an H-2B visa "after consultation with appropriate agencies of Government." 8 U.S.C. § 1184(c)(1); *see also* ECF 46, ¶ 28.

Pursuant to certain DHS labor certification regulations, issued in 2008, DHS asked DOL to determine whether (1) qualified workers in the United States are available to fill an employer's job and whether (2) the alien's employment will adversely affect wages and working conditions of similarly employed U.S. workers. 8 C.F.R. § 214.2(h)(6)(iii)(A). If, after reviewing an employer's job offer and recruitment efforts, the Secretary of Labor determines that U.S. workers are not available to fill the jobs described in the employer's application and that the offered terms of work will not adversely affect similarly employed U.S. workers, DOL issues a "temporary labor certification" that the employer must attach to the H-2B visa petition it submits to DHS. 8 C.F.R. §§ 214.2(h)(6)(iii)(C) and 214.2(h)(6)(iv)(A). No petition for H-2B visas may be issued by DHS without an approved labor certification from DOL. *Id.*

On April 29, 2015, DHS and DOL jointly issued revised H-2B regulations: the *Temporary Non-Agricultural Employment of H-2B Aliens in the United States*, 80 Fed. Reg. 24,042 (Apr. 29, 2015) ("Interim Final Rule"), and the *Wage Methodology for the Temporary*

*Non-Agricultural Employment H-2B Program*, 80 Fed. Reg. 24,146 (Apr. 29, 2015) ("Final Rule"). ECF 44, ¶ 2. Collectively, I shall refer to these rules as the "2015 Rules." Both the Interim Final Rule and the Final Rule are in effect.[5]

The 2015 Rules replace the prior H-2B regulations published on December 19, 2008, at 73 Fed. Reg. 78,020 ("2008 Final Rule"). The 2008 Final Rule was regarded as "vulnerable to challenges by employers in current and future enforcement proceedings based on the ground that the regulations…are void because DOL exceeded its statutory authority in unilaterally issuing the 2008 rule." *See* 80 Fed. Reg. at 24,048-49. Among other things, various provisions of the 2008 Final Rule were invalidated by the United States District Court for the Eastern District of Pennsylvania in *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, No. 09-240, 2010 WL 3431761 (E.D. Pa. Aug. 30, 2010). *See* 80 Fed. Reg. at 24,046.

Plaintiffs contend that DHS and DOL violated the INA and the Administrative Procedure Act ("APA"), codified in various sections of 5 U.S.C., as well as the United States Constitution, by jointly issuing certain regulations with respect to the Program. ECF 44, ¶ 4; *see also* SAC Count I (*id.,* ¶ 94) and Count III (*id.*, ¶ 96). In particular, plaintiffs contend that DHS has impermissibly "redelegate[d]" its rulemaking authority to DOL by, *inter alia*, allowing DOL to undertake the initial review of the visa program applications. *Id.*, ¶ 4; *see also id.*, ¶ 35. Further, plaintiffs allege that, even if DHS has authority to structure the Program as it has, including by designating DOL as a consultant and relying on DOL's expertise, the challenged rules are an unreasonable exercise of that authority (Counts I-II of SAC). *Id.*, ¶¶ 94-95.

---

[5] Plaintiffs refer to the Interim Final Rule as the "2015 Program Rules" and the "2015 Enforcement Rules." They refer to the Final Rule as the "2015 Wage Rule." ECF 44, ¶ 2. Defendants refer to the Interim Final Rule as the "2015 Interim Final Rule" or "2015 IFR." And, they refer to the Final Rule as the "2015 Wage Final Rule." ECF 69 at 11.

Plaintiffs contest the Interim Final Rule and the Final Rule.  The rules establish "the process by which employers obtain a temporary labor certification from DOL for use in petitioning DHS to employ a[n H-2B] nonimmigrant worker," 80 Fed. Reg. at 24,042; "the methodology by which DOL calculates the prevailing wages to be paid to H-2B workers and U.S. workers recruited in connection with application for temporary labor certification," *id.* at 24,146; and "enforcement procedures and remedies pursuant to DHS's delegation of enforcement authority to DOL." *Id.* at 24,046.

Specifically, the Interim Final Rule "expands the ability of U.S. workers to become aware of the job opportunities in question and to apply for opportunities in which they are interested" and "requir[es] that U.S. workers in corresponding employment receive the same wages and benefits as the H-2B workers." *See* 80 Fed. Reg. at 24,043. The regulations also provide additional protections to H-2B workers (such as guaranteed minimum hours and reimbursements for visa and transportation expenses) and to whistleblowers. *See id.*  The Final Rule "set[s] the methodology by which DOL calculates the prevailing wages to be paid to H-2B workers and U.S. workers recruited in connection with applications for temporary labor certification." *See* 80 Fed. Reg. at 24146.[6]

In addition, plaintiffs challenge certain DHS regulations, "collectively referred to and identified …as DHS's Labor-Certification Regulations." ECF 44, ¶ 2; *see also id.*, ¶ 34; 8 C.F.R. § 214.2(h)(6).  The Labor-Certification Regulations, issued in 2008, "govern DHS's

---

[6] In particular, the Final Rule "establishes that, in the absence of a wage set in a valid and controlling collective bargaining agreement, the prevailing wage will be the mean wage for the occupation in the pertinent geographic area derived from the Bureau of Labor Statistics Occupational Employment Statistics survey, unless the H-2B employer meets the conditions for requesting that the prevailing wage be based on an employer-provided survey."  80 Fed. Reg. at 24146. And, "[a]ny such survey submitted must meet the new methodological criteria established in this final rule in order to be used to establish the prevailing wage." *Id.*

administration of the H-2B program generally, including DOL's role in the program." ECF 69 at 11.

According to plaintiffs, the regulatory scheme is "unworkable" (ECF 44, ¶ 8) and causes unnecessary delay in visa processing. They assert that "H-2B workers are now arriving weeks, and often months, after employers' dates of need," which has harmed plaintiffs and/or their members' businesses. *Id.*, ¶ 8. Therefore, plaintiffs ask the Court to enter an Order "enjoining the Defendants nationwide from implementing the unlawful" Interim Final Rule, the Final Rule, and the Labor-Certification Regulations. *Id.*, ¶ 115.[7]

### B. Procedural Background

Defendants filed the administrate record on August 19, 2016. ECF 46. The original certification accompanying the administrative record was signed by William W. Thompson II, the Acting Administrator of DOL's Office of Foreign Labor Certification ("OFLC"). ECF 69-1 at 68. Mr. Thompson "certif[ied] that the index…lists all non-privileged documents that constitute the administrative record underlying" the 2015 Rules. *Id.* The index accompanying the record lists 18 entries dated between 2011 and 2015. *Id.* at 66-67.

The administrative record consists of 3,769 pages. It includes, among other things, the 2015 Federal Register notices adopting the Interim Final Rule; the 2011 H-2B Notice of Proposed Rulemaking ("NPRM"); all timely, non-duplicative comments received in response to

---

[7] On July 17, 2017, DHS "announced a one-time increase of 15,000 additional visas for low-wage seasonal workers for the remainder of this fiscal year…." Tracey Jan, "Trump officials open border to 15,000 more foreign workers," THE WASHINGTON POST, July 17, 2017, https://www.washingtonpost.com/news/wonk/wp/2017/07/17/trump-officials-order-15000-new-visas-for-low-wage-workers/?utm_term=.551cc6f9fb0c. According to DHS, this "increase represents a 45 percent bump from the number of H-2B visas normally issued for the second half of the fiscal year…." *Id. See also* John Fritze, "Trump administration permits 15,000 new foreign worker visas that could benefit crab industry," July 17, 2017, http://www.baltimoresun.com/news/maryland/politics/blog/bs-md-crab-visas-20170717-story.html.

the 2011 H-2B NPRM, because the 2015 Interim Final Rule was adopted after considering all the comments received as to the 2011 H-2B NPRM, *see* 80 FR 24043, *id.* at 24049; and the 2012 Federal Register notice adopting the 2012 H-2B Rule. The administrative record also includes the 2015 Federal Register notice adopting the Final Rule; the 2013 Interim Final Wage Rule, which is the basis of the 2015 Final Rule; and all timely, non-duplicative comments received in response. However, the record does not contain materials concerning DHS's 2008 Labor-Certification Regulations.

About a week after the filing, on August 24, 2016, counsel for plaintiffs, R. Wayne Pierce, Esquire, contacted defense counsel via email, beginning a series of exchanges in which plaintiffs asserted flaws in the administrative record and the certification of the record.  Plaintiffs indicated that they planned to seek to add unspecified "additional documents" into the record. ECF 69-1 at 16.   Defense counsel responded the following day, asking counsel to explain what documents he believed should be included in the administrative record.  *Id.* at 21.

On August 26, 2016, plaintiffs' counsel replied, asserting that the record certification was incomplete because it failed to state explicitly that the index contained "'all'" documents "'considered'" by the agencies during the rulemaking process.  *Id.* at 19.   Defense counsel responded on August 29, 2016, asking again what documents plaintiffs believed should be in the record that were not included.  *Id.* at 25.  Defendants also noted that the record certification was virtually identical to that used in *Bayou Lawn & Landscape Services v. Johnson*, 173 F. Supp. 3d 1271 (N.D. Fla. 2016), which also challenged the 2015 Rules, and in which plaintiff The Small and Seasonal Business Legal Center was a party, and in *La. Forestry Ass'n v. Solis*, 889 F. Supp. 2d 711 (E.D. Pa. 2012), a case challenging a 2011 DOL regulation regarding the H-2B visa program, in which plaintiffs' counsel participated.  ECF 69-1 at 25; *see also* ECF 69 at 19.

According to defendants, no party in either case raised any issue with the certifications. ECF 69 at 19.

On August 30, 2016, Mr. Pierce responded, alleging that defendants were required to submit a certification that established, among other things, that "the relevant agency official" had "actually considered" the record; it "is full or complete"; and it "existed at the time of the decision." ECF 69-1 at 24. On August 31, 2016, defense counsel responded, noting that they were "still waiting to hear from [Mr. Pierce] what exactly [he] think[s] it is that should have been in the record that was not." ECF 69-1 at 32. Defense counsel also said that, "out of an interest in avoiding unnecessary, wasteful motion practice," if plaintiffs agreed to "stipulate in writing to not filing any motion to supplement the record to submit extra-record evidence that is not otherwise subject to judicial notice," defendants would add additional language to the certification to clarify that "this is the full and complete record." *Id.* (underlining in original).

Plaintiffs declined and, on September 13, 2016, they provided defendants with a draft motion to strike and correct the record certification. ECF 69-1 at 42. Then, on September 27, 2016, defendants filed a "Corrected Certified Index", which contains three corrections. ECF 53 at 1. First, defendants corrected the title of item 7 of the index. *Id.* at 1-2. Second, the index bifurcated entry 14 into two separate entries, numbers 14 and 15. Third, the certification was revised to include language indicating that for both DHS and DOL, the corrected index was the "true, correct, and complete" record considered by the agencies in jointly promulgating the 2015 Rules. *Id.* at 2. The revised index is docketed at ECF 53-2 and contains 19 entries. The revised certification is located at ECF 53-1 and consists of certifications by DOL and DHS.

DOL's certification, again signed by Mr. Thompson, indicates that Mr. Thompson is employed as Acting Administrator of OFCL with responsibility for "overall management of

OFLC," including during the period when the 2015 Rules were promulgated. ECF 53-1 at 1. The certification further provides that "OFLC maintains the documents relevant to these rules held in DOL's possession that make up part of the administrative record for the [Interim Final Rule] and Final Rule," including "items 1-13 and 15-19 of the attached index," and that "to the best of" Mr. Thompson's knowledge, "these documents are a true and correct copy of the original document [sic] located in the files of DOL." *Id.* Finally, Mr. Thompson certified that "to the best of [his] knowledge and belief" the "materials listed in the attached index are a true, correct, and complete administrative record in this action, and that this index lists all non-privileged documents considered by DOL in issuing the [Interim Final Rule] and Final Rule." *Id.* at 2-3.

DHS's certification, signed by Denise M. Bailey, provides that Ms. Bailey is a Records Specialist at DHS, responsible for the Office of the Executive Secretary records, including at the time that the 2015 Rules were promulgated. ECF 53-1 at 4. The certification further states that Ms. Bailey is the "custodian of the documents relevant to these rules held in DHS's possession that make up part of the administrative record for the IFR and Final Rule," including "item 14 of the attached index," which is, "to the best of [her] knowledge," a "true and correct copy of the original document located in the files of DHS." *Id.* Finally, Ms. Bailey certified that "to the best of [her] knowledge and belief" the "materials listed in the attached index are a true, correct, and complete administrative record in this action, and that this index lists all non-privileged documents considered by DHS in issuing the [Interim Final Rule] and Final Rule." *Id.* at 4-5.

According to defendants, on October 18, 2016, plaintiffs "for the first time disclosed being in possession of some 17,778 documents from DHS and others from DOL…alleging that some or all of these 17,778 documents must be part of the administrative record." ECF 69 at 22; *see also* ECF 69-1 at 60.

Plaintiffs explain that on May 28, 2015, plaintiffs' counsel sent substantively identical FOIA requests to USCIS and DOL requesting copies of any documents pertaining to the DHS's transfer of any H-2 or H-2B authority to DOL at any time since 1952, as well as all statements of DOL rulemaking or adjudicative authority. ECF 61-1 at 38; *see also* ECF 60-14 (FOIA request to USCIS); ECF 60-15 (FOIA request to DOL). In response, on October 2, 2015, DOL contended that all of the documents requested could be viewed online and included the DOL's news release discussing the 2015 Rules, the Interim Final Rule, and the Final Rule. ECF 60-16 (DOL's Response to FOIA Request).

Then, on August 26, 2016, DHS responded to the FOIA request by producing 17,778 pages, consisting of, ECF 61-1 at 38:

15,785 pages "released in part" (meaning the entire page was redacted but for a notation of the claimed FOIA exemption)

1770 pages "released in their entirety" (meaning that they were extensively redacted)

212 pages "with[eld]" for no stated reason

11 pages referred to DHS "for their direct response to you"

*See also* ECF 60-16 (USCIS's Response to FOIA Request).  According to plaintiffs, DHS has not responded as to the "missing" 11 pages.  ECF 60-1 at 39.

On November 4, 2017, plaintiffs filed the instant Motion. Thereafter, defendants proposed that they would be willing to provide the record relevant to the 2008 Labor-Certification Regulations as a basis for resolving the outstanding record dispute. ECF 69 at 22-23; ECF 63 at 1. According to defendants, plaintiffs declined that offer.  ECF 69 at 23.

## II.    Standard of Review

The APA provides for judicial review of a final agency action. *See Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 629 n. 3 (4th Cir. 2017); *Friends of Back*

- 11 -

*Bay v. U.S. Army Corps of Eng'rs,* 681 F.3d 581, 586 (4th Cir. 2012); *Lee v. U.S. Citizenship & Immigration Servs.,* 592 F.3d 612, 619 (4th Cir.2010); *Ohio Valley Envtl. Coal v. Aracoma Coal Co.,* 556 F.3d 177, 192 (4th Cir. 2009). An agency's regulations must be set aside and held unlawful when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 5 U.S.C. § 706(2)(A); when they are "contrary to constitutional right, power, privilege, or immunity", 5 U.S.C. § 706(2)(B); or when they are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706 (2)(C).

Generally, "claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record...." *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.,* 524 F.Supp.2d 642, 660 (D. Md. 2007) (citing *Citizens for the Scenic Severn River Bridge, Inc. v. Skinner,* 802 F. Supp. 1325, 1332 (D. Md. 1991), *aff'd,* 1992 WL 180138, (4th Cir. July 29, 1992)). In this context, "review of the administrative record is primarily a legal question...." *Skinner, supra,* 802 F. Supp. at 1332.

"The APA provides that a reviewing court is bound to 'hold unlawful and set aside agency action' for certain specified reasons, including whenever the challenged act is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Friends of Back Bay,* 681 F.3d at 586–87 (quoting 5 U.S.C. § 706(2)(A)); *see United States v. Bean,* 537 U.S. 71, 77, (2002); *Camp v. Pitts,* 411 U.S. 138, 142 (1973) (per curiam); *N. Carolina Growers' Ass'n, Inc. v. United Farm Workers,* 702 F.3d 755, 763 (4th Cir.2012) (quoting 5 U.S.C. § 706(2)). Review under the APA is highly deferential, however, and the agency action enjoys a presumption of validity and regularity. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,* 556 F.3d 177, 192 (4th Cir. 2009) (citing *Natural*

*Res. Def. Council, Inc. v. EPA,* 16 F.3d 1395, 1400 (4th Cir.1993)). The party challenging an agency decision has the burden to demonstrate that the agency action was arbitrary or capricious. *Sierra Club v. Marita,* 46 F.3d 606, 619 (7th Cir.1995).

Notably, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency...." *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). In assessing an agency decision, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378 (1989) (quoting *Overton Park,* 401 U.S. at 416). "'Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes 'a rational connection between the facts found and the choice made.'" *Ohio Valley Envtl. Coal., Inc. v. United States Army Corps of Engineers*, 828 F.3d 316, 321 (4th Cir. 2016) (citation omitted); *see Trinity Am. Corp. v. U .S. EPA,* 150 F.3d 389, 395 (4th Cir. 1998); *Clevepak Corp. v. U.S. EPA,* 708 F.2d 137, 141 (4th Cir. 1983). However, "[t]he 'arbitrary and capricious' standard is not meant to reduce judicial review to a 'rubber-stamp' of agency action." *Ohio Valley Envtl. Coal,* 556 F.3d at 192 (quoting *Ethyl Corp. v. Envtl. Prot. Agency,* 541 F.2d 1, 34 (D.C.Cir.1976).

To the extent an administrative record is relevant to issues subject to APA review under 5 U.S.C. § 706, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp,* 411 U.S. at 142. "[C]ourts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985). Section 706 of the APA instructs the reviewing court to review the "whole

record or those parts of it cited by a party…." 5 U.S.C. § 706; *Overton Park*, 401 U.S. at 420

(1971) (clarifying that judicial review "is to be based on the full administrative record that was

before the [agency] at the time it made its decision").

"The whole administrative record includes pertinent but unfavorable information, and an

agency may not exclude information on the ground that it did not 'rely' on that information in its

final decision." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008). *See, e.g., Bar MK*

*Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir.1993) (stating that "the administrative record

consists of all documents and materials directly or indirectly considered by the agency.");

*Thompson v. United States Dep't of Labor,* 885 F.2d 551, 555 (9th Cir.1989)("The whole

administrative record ... consists of all documents and materials directly or *indirectly* considered

by agency decision-makers and includes evidence contrary to the agency's position") (citation

and quotation marks omitted, emphasis in *Thompson*); *Ad Hoc Metals Coalition v. Whitman,* 227

F.Supp.2d 134, 139 (D.D.C. 2002)(determining that a complete record must include any

materials that were "referred to, considered by, or used by [the agency] before it issued its final

rule"); *Environmental Defense Fund, Inc. v. Blum,* 458 F. Supp. 650, 661 (D.D.C. 1978)("The

agency may not ... skew the 'record' for review in its favor by excluding from that 'record'

information in its own files which has great pertinence to the proceeding in question.[1]")

However, a "complete administrative record" does not include "privileged materials, such

as documents that fall within the deliberative process privilege, attorney-client privilege, and

work product privilege." *Tafas*, 530 F. Supp. 2d at 794 (citing *Town of Norfolk v. U.S. Army*

*Corps of Eng'rs,* 968 F.2d 1438, 1457–58 (1st Cir. 1992)).  In *Tafas*, 530 F. Supp. 2d at 974, the

court explained:

>    Regarding deliberative materials, the D.C. Circuit long ago held that
> "internal memoranda made during the decisional process ... are never included in

a record." *Norris & Hirshberg v. SEC,* 163 F.2d 689, 693 (D.C.Cir.1947). Instead, "only the pleadings and the evidence constitute the record upon which the decision must be based," and "[b]riefs, and memoranda made by the [agency] or its staff, are not parts of the record." *Id.* ....Only if internal agency documents themselves introduce "factual information not otherwise in the record" must those portions of the documents be included in the administrative record. *National Courier Ass'n v. Board of Governors,* 516 F.2d 1229, 1242 (D.C.Cir.1975).

Deliberative materials are excluded from the administrative record for two reasons. First, judicial review of agency action "should be based on an agency's stated justification, not the predecisional process that led up to the final, articulated decision." *Ad Hoc Metals Coalition,* 227 F.Supp.2d at 143. The "actual subjective motivation of agency decisionmakers is irrelevant as a matter of law." *In re Subpoena Duces Tecum,* 156 F.3d 1279, 1279 (D.C.Cir.1998). Second, excluding deliberative materials "prevent[s] injury to the quality of agency decisions" by encouraging uninhibited and frank discussion of legal and policy matters. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–52, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Requiring the inclusion of deliberative materials in the administrative record would pressure agencies to conduct internal discussions with judicial review in mind, rendering "agency proceedings ... useless both to the agency and to the courts." *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n,* 789 F.2d 26, 44–45 (D.C.Cir.1986) (en banc).

In other words, "[t]o require the inclusion in an agency record of documents reflecting internal agency deliberations could hinder candid and creative exchanges regarding proposed decisions and alternatives, which might, because of the chilling effect on open discussion within agencies, lead to an overall decrease in the quality of decisions." *Ad Hoc Metals Coal.*, 227 F. Supp. at 143 (citing *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n,* 751 F.2d 1287, 1326 (D.C. Cir.1984)); *accord Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) (noting that omission of deliberative materials "advances the functional goal of encouraging the free flow of ideas within agencies, with agency employees not inhibited by the prospect of judicial review of their notes and internal communications…."); *Am. Farm Bureau Fed'n v. U.S. E.P.A.*, No. 1:11-CV-0067, 2011 WL 6826539, at *7 (M.D. Pa. Dec. 28, 2011). Moreover, "it is the agency's articulated justification for its decision that is at issue;

the private motives of agency officials are immaterial." *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 312.

Maintaining the confidentiality of predecisional internal opinions and discussions "protects the integrity of the decision-making process" and ensures that agency actions are judged based on what was decided, not on what was considered. *Jordan v. United States Dept. of Justice,* 591 F.2d 753, 772 (D.C. Cir. 1978), *disapproved of on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981). Therefore, an agency need not include deliberative and predecisional material in the administrative record. *See, e.g.*, *In re Subpoena Duces Tecum,* 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("Agency deliberations not part of the record are deemed immaterial."); *Portland Audubon Soc'y v. Endangered Species Comm.,* 984 F.2d 1534, 1549 (9th Cir.1993) (noting that "neither the internal deliberative process of the agency nor the mental processes of individual agency members" are proper components of the administrative record); *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 312 ("[C]ourts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record."); *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 54 (D.D.C. 2009) ("[A]gencies need not place predecisional and deliberative material in the administrative record, so their absence from the record does not mean that the record is 'incomplete.'[1]"), *rev'd on other grounds,* 670 F.3d 1238 (D.C. Cir. 2011); *General Elec. Co. v. Jackson,* 595 F.Supp.2d 8, 18 (D.D.C. 2009) (rejecting argument that agency's "practice of excluding irrelevant and pre-decisional deliberative documents from the administrative record results in a skewed record," because "irrelevant documents *should* be excluded from the record," and "an agency generally may exclude material that reflects internal deliberations." (Quotation marks and citation omitted,

emphasis in *General Elec. Co.*); *Amfac Resorts, LLC v. Dep't of the Interior,* 143 F. Supp. 2d 7, 13 (D.D.C. 2001) (stating that "deliberative intra-agency memoranda and other such records are ordinarily privileged and need not be included in the record").

### III.    Discussion

As to the certified administrative record, plaintiffs contend that: (1) the record certification is not "legally-sufficient," (2) defendants have not produced "the complete administrative record," (3) plaintiffs should be "permitted to complete as well as supplement the administrative record," and (4) defendants "have engaged in misconduct that warrants a privilege log . . . and further discovery to be propounded thereafter." ECF 61-1 at 8.  I discuss these contentions, in turn.

### A.  Record Certification

For several reasons, plaintiffs maintain that the defendants failed to produce a legally sufficient record certification.  In particular, plaintiffs contend that the certification fails to state that defendants provided the Court with the entire and "complete" record.  ECF 61-1 at 31; *see also id.* at 29, 36.  Further, plaintiffs assert that the certification is defective because it fails to establish that the record was considered by the relevant decisionmaker or that the information "existed at the time the regulation was being considered."  *Id.* at 32.  Plaintiffs also argue that the certification fails to identify the "relevant decisionmaker who actually considered the full administrative record," and they claim that there is no indication that those who signed the certification were authorized to do so.  They seem to suggest that the Secretary of DHS and the Secretary of DOL must certify the record.  *Id.* at 32-33; *see also* ECF 73 at 8 ("The Departments have failed to establish that the individuals signing the record certifications were duly

authorized."). In addition, plaintiffs assert that where there is more than one decisionmaker, "individual records must be developed for each of them." ECF 61-1 at 33.

Defendants counter that "the APA does not require agencies compiling an administrative record to supply formal certifications with such records containing specific language or 'magic' words that must be used to certify or identify an administrative record."  ECF 69 at 23.

Although DOL and DHS, "like many other federal agencies, file[] certifications with administrative records as a matter of practice, certifications are not required by the APA or any other law." *Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 18 (D.D.C. 2013), *vacated in part on other grounds on reconsideration*, No. CV 10-01638 (CKK), 2013 WL 11241368 (D.D.C. July 30, 2013); *see also Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 77 (D.D.C. 2008) (concluding that "there is no legal authority compelling the defendants to certify an administrative record in the first instance…."). Moreover, a "purportedly inadequately worded certification—or even the complete absence of a certification—" does not "defeat[] the presumption of regularity to which the administrative record is entitled…." *Banner Health*, 945 F. Supp. 2d at 18; *see also Ravulapalli v. Napolitano,* 840 F. Supp. 2d 200, 206 (D.D.C.2012) ("The lack of certification, without more, certainly does not rise to the level of "clear evidence" necessary to overcome the presumption of regularity.")

Plaintiffs rely primarily on *Appalachian Power Co. v. Ruckelshaus*, 477 F.2d 495 (4th Cir. 1973), for the propositions that there are mandatory components of a record certification and that the secretaries of DHS and DOL must certify the record.  *See* ECF 61-1 at 29-30.  In my view, their reliance is misplaced.

In that case, under the APA, plaintiffs challenged the final decision of the Administrator of the Environmental Protection Agency ("EPA") with respect to state plans concerning certain

EPA-regulated pollutants. *Id.* at 498-500. The EPA argued that judicial review of its decision in approving the state plans did not require a record and that the Court could simply review the "order of approval and the state plan itself." *Id.* at 505. The Fourth Circuit disagreed, noting that for APA review "the Court must have, not merely that full articulation of the agency's reasoning, but it must also have 'the whole record' on which the agency acted, or, as it is expressed in *Overton Park*, 'the full administrative record that was before the Secretary at the time he made his decision.'" *Id.* at 507 (quoting *Overton Park*, 401 U.S. at 415-16). Noting that "[n]o such record is now before the Court," the Court ordered the EPA Administrator to submit the record by "promptly certify[ing] the 'full record' that was before him at the time he approved the state plans involved in these actions." *Id.* In short, the appeal was "premature" until "the full administrative record" was before the Court. But, the decision says nothing about the required content of an actual certification. *Id.* Nor has the Court found any decision that establishes requirements for the content of a record certification.

As noted, defendants previously revised the original certification to include language indicating that for both DHS and DOL, the corrected index was the "true, correct, and complete" record considered by the agencies in jointly promulgating the 2015 Rules. ECF 53 at 2; *see* ECF 53-1 (revised certification). In the revised certification, both DHS and DOL *separately* state that "the attached index" contains "a true, correct and complete administrative record in this action," and they separately state that this index "lists all non-privileged documents considered by DOL" and "considered by DHS" in "jointly issuing the [Interim Final Rule] and Final Rule." ECF 53-1 at 1-2, 4-5.

Moreover, as to plaintiffs' claim that "the Departments have failed to establish that the

individuals signing the record certifications were duly authorized" (ECF 73 at 8), I agree with defendants that the "[t]he certification makes abundantly clear who the agencies' designees are for certification purposes (Mr. Thompson and Ms. Bailey), the custodians of the documents in each agency's possession…."  ECF 69 at 28; *see also* ECF 53-1.  As noted, Mr. Thompson is the Acting Administrator of OFLC, which "maintains the documents relevant to these rules held in DOL's possession that make up part of the administrative record for the [Interim Final Rule] and Final Rule…." ECF 53-1 at 1.   And, Ms. Bailey is a Records Specialist at DHS, responsible for the Office of the Executive Secretary records.  ECF 53-1 at 4.   She is the "custodian of the documents relevant to these rules held in DHS's possession that make up part of the administrative record for the IFR and Final Rule…." *Id.*  Plaintiffs cite no authority for the proposition that the Secretary of a specific agency must be the one to certify the record in every case in which the Secretary authorizes the issuance of the rule.

In my view, the revised certification is legally sufficient; there is no merit to plaintiffs' request for an order requiring defendants to submit yet another corrected record certification. Accordingly, I shall deny plaintiffs' request to order defendants to submit a revised record certification.

### B.  Supplementation of the Record

Plaintiffs seek to supplement the administrative record in several ways.  They devoted five pages of their lengthy memorandum to their contention that defendants failed to produce a legally sufficient record and therefore supplementation is warranted.

Plaintiffs seek to supplement the administrative record with documents they that obtained in response to their FOIA request to USCIS.   ECF 60-1 at 28. Plaintiffs did not provide the Court with copies of the all of the documents they wish to introduce.  Rather, they provided 79

pages of excerpts from the documents produced by USCIS in response to plaintiffs' FOIA request. ECF 60-19. These excerpts include five categories of documents: internal DHS emails concerning non-final versions of what became the 2015 Rules (ECF 60-19 at 1-47); DHS emails concerning other H-2B matters, including drafts of other rules, dating from 2008 to at least two weeks *after* the publication of the 2015 Rules (*id.*); emails concerning interactions between DHS and Congress, which appear to be related to possible revisions to statutory language regarding the H-2B program (*id.* at 48-49, 65-66); excerpts of comments submitted for a 2013 regulation which is the basis of the 2015 Final Rule (*id.* at 50-64); and non-final versions of DHS rules governing H-2B nonimmigrants in the territory of Guam. *Id.* at 19-20, 67-79.

According to plaintiffs, the documents provided in response to the FOIA request are "highly-relevant." ECF 61-1 at 39. They argue, *id.* at 41: "All of these documents were procured from DHS, considered by DHS, and should have been included in the 'complete' administrative record." Plaintiffs also assert: "Even if the Government were free to ignore this evidence and avoid completing the record, Plaintiffs may still supplement the record because this material bears upon relevant factors that should have been considered." *Id.* at 42. In particular, plaintiffs maintain that the government defendants failed to consider "the nature of the authority transferred from DHS to DOL" and "whether Congress authorized such transfer." *Id.*

In addition, plaintiffs seek to supplement the record with certain exhibits to the SAC. They claim the exhibits contain information regarding the rulemaking authority of the government agencies. *See* ECF 26-1 ("Evidence Summary of Claimed Rulemaking Authority"); ECF 26-2 ("Evidence Summary of Claimed Enforcement Rulemaking Authority.").

Finally, plaintiffs ask the Court to order defendants to produce the record related to the 2008 Labor-Certification regulations. ECF 60-1 at 20. Plaintiffs state that they "are prejudiced because there is literally no record basis for a significant part of this case." *Id.* at 34.

Defendants counter that the documents that plaintiffs seek to add to the record are "either privileged, internal deliberative documents that do not belong in the administrative record": irrelevant to the 2015 Rules; not "directly or indirectly considered by the relevant decisionmakers"; or, in the case of the comments submitted for the 2013 Rule, already included in the record. ECF 69 at 31. According to defendants, "the entirety of the documents Plaintiffs contend are part of the record as to the 2015 Rules – e.g., internal drafts of the 2015 Rules, comments on those drafts, and discussions about process – as well as all deliberative materials in Plaintiffs' exhibits that have no relevance to the 2015 Rules at all – are by definition not part of the administrative record." *Id.* at 32. And, as discussed in more detail, *infra*, defendants argue that they are not required to provide the Court with the record pertaining to the 2008 Labor-Certification Regulations because "that Rule is not properly the subject of any administrative record because any challenge to the 2008 DHS Rule is time-barred." *Id.* at 38.

Moreover, defendants contend that plaintiffs have not met their burden to show that the documents are relevant to the 2015 Rules. They elaborate, ECF 69 at 35-37:

> First, [plaintiffs] merely identify documents they received through a FOIA request, but fail to explain their relevance to the actual 2015 rulemaking, as opposed to the H-2B program writ large or deliberations concerning prior rulemakings. More importantly, they completely fail to demonstrate these documents were in fact "directly or indirectly considered by the relevant" decisionmakers.
>
> ***
>
> Plaintiffs essentially dump at the Court's doorstep a number of documents produced by DHS in response to a FOIA request, but do not actually articulate with any concrete specificity why these documents, to the extent any of them are in fact non-privileged, are relevant, who at the agency should have considered

- 22 -

them, under what context they would have been considered, or any other basis to conclude these documents were in fact directly or indirectly before the decisionmaker with respect to the 2015 Rules. Indeed, Plaintiffs' position at bottom appears to be nothing more than the claim that Plaintiffs, not agencies, are entitled to designate administrative records in APA cases.

If an agency fails to produce a complete administrative record, a party may request supplementation of the record. *Otsuka Pharm. Co. v. Burwell*, No. GJH-15-852, 2015 WL 1579127 (D. Md. Apr. 8, 2015). Some courts refer to this form of supplementation as completion of the record. *See Am. Farm Bureau Fed'n*, No. 1:11-CV-0067, 2011 WL 6826539, at *4 ("[C]*ompletion* of the record implies the addition of only those relevant documents that were actually available to, and considered by the agency at the time the decision was made and, therefore, should have been part of the record but were improperly excluded." (Emphasis in original). Judge George J. Hazel of this Court explained in *Burwell*, 2015 WL 1579127, at *3:

 "An administrative record may be 'supplemented' in one of two ways—either by (1) including evidence that should have been properly a part of the administrative record but was excluded by the agency, or (2) adding extrajudicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record." *WildEarth Guardians v. Salazar,* 670 F.Supp.2d 1, 5 n. 4 (D.D.C.2009).

Here, plaintiffs argue that the agencies have not submitted all of the materials that properly comprise the entire administrative record.   They primarily claim that they seek supplementation on the ground that the record does not include evidence that was before the relevant decisionmaker(s) at the time of the decisions. *See generally* ECF 61-1 at 38-42; *see Ohio Valley Envtl. Coal. v. Whitman*, No. CIV.A. 3:02-0059, 2003 WL 43377, at *2 (S.D.W. Va. Jan. 6, 2003).   Plaintiffs devote one paragraph to an alternative argument that "extrinsic evidence" is admissible in this case "because [certain] material bears upon relevant factors that should have been considered" by defendants. ECF 61-1 at 42.

Notably, the "'agency is entitled to a strong presumption of regularity that it properly designated the administrative record.'" *Burwell*, 2015 WL 1579127, at *2 (quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs,* 448 F.Supp.2d 1, 5 (D.D.C. 2006)); *see also Ctr. for Food Safety v. Vilsack*, No. 15CV01590HSGKAW, 2017 WL 1709318, at *2 (N.D. Cal. May 3, 2017) ("'An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity.'") (Citation omitted); *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309 (emphasizing that it is "settled that deference is due to the agency's judgment as to what constitutes the whole administrative record."); *Tafas*, 530 F. Supp. 2d at 795 (stating that "there is a presumption that the agency properly designated the administrative record").   For this reason, "[i]f an agency certifies that the administrative record is full and complete, the court 'assumes that the agency properly designated the Administrative Record absent clear evidence to the contrary.'" *Am. Farm Bureau Fed'n*, 2011 WL 6826539, at *2 (citation omitted); *accord Bar MK Ranches,* 994 F.2d at 740; *Ctr. for Food Safety*, 2017 WL 1709318, at *2.

Accordingly, "[s]upplementation of the record as designated by the agency is…the exception, not the rule." *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309.  But, as the Court said in *Burwell*, 2015 WL 1579127, at *2.

> Nonetheless, an "agency may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made." *Blue Ocean Inst. v. Gutierrez,* 503 F.Supp.2d 366, 369 (D.D.C.2007). Nor may an agency exclude information simply because it did not rely on it for its final decision. *See Banner Health v. Sebelius*, 945 F.Supp.2d 1, 16 (D.D.C.2013). Rather, "a complete administrative record should include all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision." *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior,* 143 F.Supp.2d 7, 12 (D.D.C.2001) (internal quotations omitted).

To overcome the presumption that the agency properly designated the record, "a plaintiff must (1) 'identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record,' and (2) 'identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record[.]'" *Ctr. for Food Safety*, 2017 WL 1709318, at *3 (citation omitted); *see also Pac. Shores*, 448 F. Supp. 2d at 6.  Conversely, "[i]t is insufficient for a plaintiff to 'simply ... assert [ ] that the documents are relevant, were before ... [the agency] at the time it made its decision, and were inadequately considered.'" *Winnemem Wintu tribe v. U.S. Forest Serv.*, No. 2:09-CV-01072-KJM-KJ, 2014 WL 3689699, at *10 (E.D. Cal. July 24, 2014) (quoting *Pac. Shores,* 448 F. Supp. 2d at 6).  Rather, "[c]lear evidence" must "be demonstrated by a 'strong,' 'substantial,' or 'prima facie' showing that the record is incomplete." *Tafas*, 530 F. Supp. 2d at 795 (citing *Amfac Resorts,* 143 F.Supp.2d at 11).

However, "where a plaintiff contends that an agency has not submitted to the court all the materials that properly constitute the administrative record, no showing of bad faith or improper purpose is necessary." *Am. Farm Bureau Fed'n*, 2011 WL 6826539, at *4; *see also Ohio Valley Envtl. Coal.*, 2003 WL 43377, at *2 (where "Plaintiffs contend that EPA has not submitted to the court all the materials that properly constitute the complete administrative record ... no showing of bad faith or improper purpose is necessary); *Ad Hoc Metals Coal.*, 227 F. Supp. 2d at 140 (same); *Cf. Overton Park,* 401 U.S. at 420 (clarifying that a showing of bad faith is only required where the method of supplementation involves testimony inquiring into the mental processes of the administrative decision makers).

But, "a showing of bad faith or improper purpose might be necessary" where plaintiffs seek to supplement the administrative record with documents "that were neither before the agency nor considered in the decision-making process." *Ohio Valley Envtl. Coal.*, 2003 WL 43377, at *2 (citing *Overton Park,* 401 U.S. at 420). This form of supplementation "implies either: 1) the addition of newly created evidence, such as through the collection of direct testimony from agency decision makers, typically requested by the court to explain part of the record or 2) the addition of documents or other information that were not before the agency when the decision was made, such as post-decision comments or studies." *Am. Farm Bureau Fed'n,* 2011 WL 6826539, at *4.

I turn to a discussion of the various categories of documents with which plaintiffs seek to supplement the record.

### 1. FOIA Documents

### a. Internal Agency Documents

Plaintiffs seek to supplement the record with various internal agency materials obtained through their FOIA request to DHS. These include: 1) internal DHS emails concerning non-final versions of what became the 2015 Rules (ECF 60-19 at 1-47); 2) internal DHS emails, dating from 2008 to at least two weeks *after* the publication of the 2015 Rules, concerning other H-2B matters, including drafts of other rules (*id*.); 3) DHS emails concerning interactions between DHS and Congress, which appear to be related to possible revisions to statutory language regarding the H-2B program (*id.* at 48-49, 65-66); and 4) non-final versions of DHS rules governing H-2B nonimmigrants in the territory of Guam. *Id.* at 19-20, 67-79. Plaintiffs seem to believe internal comments from DHS shed light on the issues of whether DHS

understood that it was delegating authority to DOL or whether the relevant rules were in fact jointly issued by DHS and DOL.  *See* ECF 61-1 at 39-40.

As noted, defendants argue that these documents are "internal deliberative documents" (ECF 69 at 31), including "internal drafts of the 2015 Rules, comments on those drafts, and discussions about process.  *Id.*  at 32.  In their view, the exhibits have no relevance to the 2015 Rules at all–" (*id.*) and "do not belong in the administrative record…." *Id.* at 31.

In their Reply, plaintiffs maintain that the documents are not privileged because they were produced pursuant to a FOIA request, and thus were already "scrutinized" for deliberative-process privilege.  ECF 73 at 9 (citing ECF 60-18, USCIS response to FOIA request, at 2). Plaintiffs point to the FOIA exemption codified at 5 U.S.C. § 552(b)(5), which provides protection for "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency…."  They argue that "the Government already concluded that these particular exhibits were, in fact, not privileged to the extent they were not redacted."  ECF 73 at 10.

As discussed, *supra*, "intra-agency memoranda and other such records…need not be included in the record." *Amfac Resorts, L.L.C.*, 143 F. Supp. 2d at 13; *see, e.g.*, *In re Subpoena Duces Tecum,* 156 F.3d at 1279 ("Agency deliberations not part of the record are deemed immaterial."); *Portland Audubon Soc'y v. Endangered Species Comm.,* 984 F.2d at 1549  (stating that "neither the internal deliberative process of the agency nor the mental processes of individual agency members" are proper components of the administrative record); *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 312 ("[C]ourts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record."); *Oceana, Inc.*, 634 F.

Supp. 2d at 54 ("[A]gencies need not place predecisional and deliberative material in the administrative record, so their absence from the record does not mean that the record is 'incomplete.'[]").

As indicated, the materials in this category of documents consist of internal DHS emails concerning non-final versions of what became the 2015 Rules; internal DHS emails concerning other H-2B matters, including drafts of other rules; emails concerning interactions between DHS and Congress, which appear to be related to possible revisions to statutory language regarding the H-2B program; and non-final versions of DHS rules governing H-2B nonimmigrants in the territory of Guam. *See* ECF 60-19.  Plaintiffs have not provided any authority, nor has the Court found any, for the proposition that a document obtained through a FOIA request under 5 U.S.C. § 552(b)(5) cannot qualify as internal, deliberative material for purposes of determining whether the document is properly part of an administrative record.

The definition of deliberative or predecisional material is not governed by a particular statute or regulation.  However, several cases shed light on whether a document qualifies as internal, deliberative material for purposes of determining whether the document is properly part of an administrative record.  *See*, *e.g.*, *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. at 313 (finding that "individual reviewers' worksheets and initial score sheets; the non-final draft of the agency's summary statement; and emails and other documents that might bear upon the agency's pre-decisional process" should not be included in the administrative record because they qualified as "pre-decisional materials"); *Tafas*, 530 F. Supp. 2d at 796-97 (recognizing that internal agency emails, correspondence, summaries, drafts, works in progress, and analysis evidencing the agency's initial formulation of the rules at issue are "prime examples of deliberative materials that are immaterial as a matter of law and need not be included in the

administrative record"); *Ad Hoc Metals Coalition,* 227 F. Supp. 2d at 142–43 (denying plaintiffs' request to supplement the record with internal EPA emails exchanged during rulemaking process).

Upon review of the relevant documents, the Court concludes that they are quintessentially deliberative and/or predecisional material, and the materials are "irrelevant as it is the stated reasons for the …Rules that the Court must consider…." *Tafas,* 530 F.Supp.2d at 797. Moreover, even if these documents were not deliberative, many of them do not even appear to be related to the 2015 Rules or 2008 Labor-Certification Regulations. *See, e.g.*, ECF 60-19 at 65-66.

In sum, as to this category of documents, plaintiffs have failed to make "a 'strong,' 'substantial,' or 'prima facie' showing that the record is incomplete." *Tafas*, 530 F. Supp. 2d at 795 (citing *Amfac Resorts,* 143 F.Supp.2d at 11).

### b.  2013 Comments

Plaintiffs seek to supplement the record with excerpts of comments submitted by members of the public with respect to the 2013 version of Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, Part 2, 78 FR 24047 (Apr. 24, 2013) ("2013 Interim Final Wage Rule"), which is the basis for the 2015 Final Rule. ECF 61-1 at 40; *see* ECF 60-19 at 50-64. Plaintiffs assert, ECF 61-1 at 40: "For at least one rulemaking, DOL compiled extensive public comments on DOL's lack of rulemaking authority….These documents conveniently gather arguments and data that DOL and DHS considered and should be in the record." Defendants counter that the "full version" of the excerpts of comments submitted for the 2013 Interim Final Wage Rule "are already in the administrative record." ECF 69 at 31. In their Reply, plaintiffs did not dispute this assertion.

The administrative record contains the 2013 Interim Final Wage Rule, which is the basis for the 2015 Final Rule, and comments received in response. Administrative Record, 001849-003574; *see* 80 Fed. Reg. at 24,151 ("[W]e have assessed the input received in response to the request for comments in the 2013 [Interim Final Rule], and we issue a final rule today based on the review and analysis of those comments."). Defendants assert that all timely, non-duplicative comments were included in the record. ECF 69 at 18, n. 6. In particular, the record contains 316 "Unique Comments" received from various stakeholders, including employers and worker advocacy groups, in response to the 2013 Interim Final Wage Rule. ECF 53-2 at 2.

The Court reviewed the administrative record in order to ascertain whether the excerpts of 2013 comments that plaintiffs provided to the Court were in fact already included in the record. It appears that they were. As these excerpts are already included in the record, there is no basis to supplement the record with duplicate materials. Nor have plaintiffs made the requisite strong showing that defendants failed to include in the record all timely, non-duplicative comments received in response to the 2013 Interim Final Rule.

### 2. Rulemaking Authority Exhibits

Plaintiffs contend that certain exhibits attached to the SAC should be made "part of the record" in order to "make this case manageable." These appear to be exhibits 1 and 2, which were attached to the first amended complaint, not the SAC. *See* ECF 26-1 ("Evidence Summary of Claimed Rulemaking Authority"); ECF 26-2 ("Evidence Summary of Claimed Enforcement Rulemaking Authority."). According to plaintiffs, these exhibits shed light on defendants' "wildly inconsistent" "claims of [rulemaking] authority". ECF 61-1 at 41. Plaintiffs ask the Court to order defendants to explain "why" they have "rejected" certain rulemaking "theories." *Id.*

Defendants counter that "the request…fundamentally confuses APA review from the normal civil case." ECF 69 at 37. In their view, plaintiffs may not supplement the record" based on "their subjective view of what might be convenient for them, or for any other reason, absent a showing of bad faith." *Id.*

As discussed, plaintiffs may seek to supplement the administrative record with documents "that were neither before the agency nor considered in the decision-making process." *Ohio Valley Envtl. Coal.*, 2003 WL 43377, at *2 (citing *Overton Park,* 401 U.S. at 420). This form of supplementation "implies either: 1) the addition of newly created evidence, such as through the collection of direct testimony from agency decision makers, typically requested by the court to explain part of the record or 2) the addition of documents or other information that were not before the agency when the decision was made, such as post-decision comments or studies." *Am. Farm Bureau Fed'n,* 2011 WL 6826539, at *4.

The material here does not meet the criteria outlined above; this is not the type of material with which a record may be supplemented. *Cf. Am. Farm Bureau Fed'n,* 2011 WL 6826539, at *4. But, I may consider plaintiffs' exhibits (ECF 26-1; ECF 26-2) to the extent that they contain any information that constitutes "legal authority." *Louisiana Forestry Ass'n, Inc. v. Solis*, 889 F. Supp. 2d 711, 720 n. 7 (E.D. Pa. 2012), *aff'd sub nom. Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653 (3d Cir. 2014).

### 3. 2008 Labor-Certification Regulations

Plaintiffs complain that defendants failed to include DHS's 2008 Labor-Certification Regulations, 8 C.F.R. § 214.2(h)(6). *See, e.g.*, ECF 61-1 at 34. As noted, the 2008 Labor-Certification Regulations "govern DHS's administration of the H-2B program generally, including DOL's role in the program." ECF 69 at 11. Plaintiffs assert, ECF 61-1 at 34:

The Government's original defense to this omission was that it had no idea that it was being sued based on these regulations. Even after being told repeatedly during meet-and-confer sessions, the Government still chose repeatedly to take no action. There are 24 separate references to the DHS's Labor-Certification Regulations throughout the Second Amended Complaint, and the fact that they are at issue could not be plainer….Plaintiffs are prejudiced because there is literally no record basis for a significant part of this case.

In their Opposition, defendants argue that they were not required to produce a record for these regulations because "any challenge to the 2008 [Labor-Certification Regulations are] time-barred." ECF 69 at 38.   They maintain that plaintiffs raise facial challenges regarding the 2008 Labor-Certification Regulations and, therefore, these claims are subject to the six-year limitations period applicable to all APA actions.  ECF 69 at 39 (citing, *inter alia*, 28 U.S.C. § 2401(a)).[8]

According to defendants, plaintiffs "perfunctorily claim in their motion that they challenge these rules 'as applied' to them," but defendants insist that "the operative complaint makes abundantly clear [plaintiffs] are challenging the 2008 rules as a facial matter…." ECF 69 at 38 (citations omitted).  Defendants point out that plaintiffs "do not seek any relief related to their individual applications for labor certifications (which have all been granted) or their H-2B petitions (which have similarly all been granted), but instead seek to enjoin the operation of the 2008 Rule nationwide, as applied to every member of the regulated public, on the basis that the regulations exceed DHS's authority." *Id.*

Defendants note that "'the limitations period begins to run when the agency publishes the regulation.'"  ECF 69 at 39 (quoting *Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012)).  They assert: "Because DHS published the 2008 Rule on December 18, 2008, the six-

---

[8] 28 U.S.C. § 2401(a), provides, in relevant part: "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

year limitations period under § 2401(a) has long since expired. And because the six-year limitations period has lapsed on such challenges, by definition the administrative record for the 2008 Rule is not part of the record in this case.[] ECF 69 at 39. However, defendants add that, "in an effort to avoid wasteful motion practice, Defendants offered to produce the 2008 Rule record, but that offer has been rebuffed by Plaintiffs." *Id.* at 39 n. 19. Defendants suggest that it would now be appropriate for the Court, *sua sponte* to dismiss plaintiffs' claims pertaining to the Labor-Certifications regulations as time-barred, because "the limitations period of section 2401(a) is jurisdictional.[]" ECF 69 at 40.

Plaintiffs dispute that claims pertaining to the Labor-Certification Regulations are time-barred. In their view, limitations did not begin to run until April 29, 2015, when the 2015 Rules were issued. ECF 73 at 13. Plaintiffs contend that the 2015 Rules "had the necessary and corresponding effect of modifying the obligations, consequences, and legal theory of DHS's Labor-Certification Regulations that purportedly flow from DHS's authority under the INA." *Id.* at 12.

The issue of whether claims pertaining to the Labor-Certification Regulations are time-barred has not been fully briefed. In my view, it is premature to conclude, without the benefit of complete briefing on this issue, that these claims are barred by limitations.

Because I cannot yet determine that a challenge to the 2008 Labor-Certifications is time-barred, defendants must produce the record pertaining to these regulations. 5 U.S.C. § 706 (instructing the reviewing court to review the "whole record or those parts of it cited by a

party….”); *Overton Park*, 401 U.S. at 420 (1971) (clarifying that judicial review “is to be based on the full administrative record that was before the [agency] at the time it made its decision”).[9]

## C. Discovery and Privilege Log

Plaintiffs argue that they are entitled to discovery as well as a privilege log. ECF 61-1 at 42-46.[10]    As plaintiffs concede, ordinarily “claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record....” *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc.,* 524 F.Supp.2d at 660. The “strong presumption against general discovery into administrative proceedings” is “born out of the objective of preserving the integrity and independence of the administrative process.” *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 195 (3rd Cir. 2006); *see also Tafas*, 530 F. Supp. 2d at 794 (“Because judicial review of agency action is generally limited to the administrative record, discovery is typically not permitted.”).

In APA cases, courts generally permit discovery in two situations.  First, “Courts have allowed discovery…in situations where ‘those challenging agency action have contended the record was incomplete.’” *Id.*  (quoting *Public Power Council v. Johnson,* 674 F.2d 791, 794 (9th Cir.1982)); *see Bar MK Ranches,* 994 F.2d at 740 (“When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question.”); *NVE, Inc.*, 436 F.3d at 195-96; *Am. Farm Bureau Fed'n*, No. 1:11-CV-0067, 2011 WL 6826539, at *10 (M.D. Pa. Dec. 28, 2011) (“In [*NVE, Inc.*, 436 F.3d 182], the Third Circuit enunciated another exception to the strong presumption against discovery: a materially deficient administrative record.”).

---

[9] I urge the parties to confer and cooperate regarding record production and to resolve any issues without the need for additional motions.

[10] As part of this discovery, plaintiffs seek to require defendants “to provide a [*Federal Communications Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)] explanation” as to why they “rejected” certain rulemaking “theories.” ECF 61-1 at 41.

Second, courts permit discovery in APA cases if plaintiffs seek to demonstrate bad faith, bias, or improper behavior on the part of the agency.  *See, e.g., NVE, Inc.*, 436 F.3d at 195; *Tafas*, 530 F. Supp. 2d at 797–98; *Ad Hoc Metals Coal.*, 227 F. Supp. 2d 134, 137 n. 1; *Amfac Resorts, L.L.C.*, 143 F. Supp. at 12.

"[T]o overcome the strong presumption against discovery, Plaintiffs must make a strong showing of bias or incompleteness." *Am. Farm Bureau Fed'n*, 2011 WL 6826539, at *10.  And, "[a]bsent a showing that 'critical' or 'fundamental' documents were omitted, the presumption against discovery remains." *Id.*, at *11.  Moreover, "the size of the record, while not dispositive of the question of whether discovery is appropriate, is nevertheless a factor that the court should consider in deciding whether to take the 'the unusual step of permitting invasive discovery into administrative decision-making.'" *Id.* (quoting *NVE*, 436 F.3d at 195).

For example, in *Exxon Corp. v. Dept. of Energy,* 91 F.R.D. 26 (N.D. Tex. 1981), the court found that a 126–page record was "incomplete on its face," finding that "'it strains the imagination' to assume that this record contains all the information considered by the agency." *Id.* at 34 (citation omitted). In *NVE*, the Third Circuit distinguished *Exxon,* finding that the "breadth of the [133,000–page] record submitted" did not suggest that the record was incomplete on its face and thus found discovery was not warranted. 436 F.3d at 196. *See also Pac. Shores*, 448 F. Supp. 2d at 7 ("The administrative record in this case consists of 1593 pages of reports, correspondence, studies and analyses. The sheer volume and complexity of this administrative record suggests that it is complete.").

In *Tafas*, 530 F. Supp. 2d at 795, 797, the court elaborated, stating:

> Plaintiffs seeking discovery, however, must overcome the "presumption of regularity": the presumption that public officers have properly discharged their official duties. *United States v. Chemical Foundation,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926). Courts must apply this presumption absent clear evidence

that those duties were improperly discharged. *Chemical Foundation,* 272 U.S. at 14–15, 47 S.Ct. 1; *see also National Archives and Records Admin. v. Favish,* 541 U.S. 157, 174, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004)(finding that where the presumption of regularity is applicable, "clear evidence is usually required to displace it"). Applying this concept to judicial review of agency action, there is a presumption that the agency properly designated the administrative record, and plaintiffs must show clear evidence to the contrary to obtain discovery….Clear evidence may be demonstrated by a "strong," "substantial," or "prima facie" showing that the record is incomplete. *Amfac Resorts,* 143 F.Supp.2d at 11 (citations omitted).

\*\*\*

In the context of judicial review of agency action under the APA, courts have allowed discovery where there has been a "strong showing of bad faith or improper behavior." *Cmty. For Creative Non–Violence v. Lujan,* 908 F.2d 992, 997 (D.C.Cir.1990)(citing *Overton Park,* 401 U.S. at 420, 91 S.Ct. 814). However, mere allegations of "bad faith" are inadequate to overcome the presumption that government officials have acted "properly and in good faith." *Mullins v. U.S. Dept. of Energy,* 50 F.3d 990, 993 (Fed.Cir.1995). Instead, to obtain discovery beyond the administrative record on the basis of bad faith there must be a "strong preliminary showing" of impropriety. *Nat'l Nutritional Foods Assoc. v. Food & Drug Admin.,* 491 F.2d 1141, 1145 (2d Cir.1974); *see also Friends of the Shawangunks, Inc. v. Watt,* 97 F.R.D. 663, 667–68 (N.D.N.Y.1983)("[I]n order to overcome the presumption ... a party seeking to depose an administrative official must show specific facts to indicate that the challenged action was reached because of improper motives.").

Courts have imposed a high standard on plaintiffs seeking to demonstrate bad faith.

In sum, "a party must provide good reason to believe that discovery will uncover evidence relevant to the Court's decision to locate beyond the record." *Amfac Resorts, L.L.C.,* 143 F. Supp. 2d at 12. And, to "obtain discovery from an agency in an APA case…a party must make a significant showing—variously described as a 'strong', 'substantial', or 'prima facie' showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record." *Id.* (citations omitted).

Plaintiffs argue that discovery is permissible here because of defendants' alleged "improper behavior." ECF 61-1 at 44 (citing, *inter alia, Overton Park,* 401 U.S. at 420).

According to plaintiffs, "an improper purpose can be established through a statutory violation." ECF 61-1 at 45 (citing *Singer Sewing Machine Co. v. NLRB*, 329 F.2d 200 (4th Cir. 1964)). "Plaintiffs focus on three statutory violations to prove improper purpose." ECF 61-1 at 45.

As to the first alleged violation, plaintiffs explain, ECF 61-1 at 45:

> Because the Departments chose to resort to the extra-statutory procedure of "jointly issued" regulations, the public is left to guess what was considered by each agency, what actions were taken by each agency, and whether that procedure was anything more than a routine [Office of Information and Regulatory Affairs] review. Plaintiffs are prepared to show on motion for summary judgment what is readily obvious from the INA that Congress did not authorize it, but they should have the benefit of the facts to prove their case. At a minimum, the Plaintiffs need a privilege log consistent with the local rules so there is some record as to who considered what. Ultimately, more robust discovery may be necessary to determine the scope and purpose of DHS's review.

Second, plaintiffs contend that they "need discovery to determine whether either or both Departments properly balanced the competing needs of H-2B employers and U.S. workers." *Id.* at 45. Plaintiffs note that the 2015 Rules "are conspicuously silent as to whether this purpose was attained." *Id.* Third, plaintiffs claim that they "need discovery to determine whether DHS rubberstamped DOL's regulations…. and abdicated its jurisdiction to DOL." ECF 61-1 at 46.

Defendants maintain that plaintiffs have not shown that defendants "acted in bad faith…." ECF 69 at 45. In particular, defendants contend that plaintiffs' argument that defendants acted in bad faith by jointly issuing the 2015 Rules "puts the proverbial cart before the horse by assuming Plaintiffs' merits position will prevail, a dubious proposition given that each published decision to explicitly or implicitly consider Plaintiffs' claims on the merits has rejected them." *Id.* at 43 (citing *Bayou*, 173 F. Supp. 3d at 1278 n. 4; *La. Forestry*, 745 F.3d at 669-75). Defendants assert, ECF 69 at 43: "[W]hether Defendants, as a matter of law, did or did not exceed their statutory authority in no way presents a showing of bad faith sufficient to circumvent the record review rule." Moreover, defendants contend, *id.* at 45: "That Plaintiffs

disagree with the actions taken by Defendants on policy grounds does not rise to the level of bad

faith sufficient to permit discovery, and Plaintiffs cite no case to the contrary."  Defendants also

note that plaintiffs' claims that "DHS exceeded its statutory authority under the INA or otherwise

violated the Constitution by virtue of the H-2B program's structure is in fact a pure question of

law that does not require an administrative record for its resolution."  ECF 69 at 43 (citing *Am.*

*Bankers Ass'n v. NCUA*, 271 F.3d 262, 266 (D.C. Cir. 2001); *Sierra Club v. United States Fish &*

*Wildlife Serv.*, 245 F.3d 434, 440 n.37 (5th Cir. 2001)); *see also* ECF 69 at 45.

Notwithstanding the Court's finding that the record must be supplemented with regard to

the Labor-Certification Regulations, plaintiffs have failed to meet their burden to show that

discovery is appropriate here.  First, "limited discovery" is not necessary to determine whether

the administrative record is incomplete.  *Bar MK Ranches,* 994 F.2d at 740. As discussed, *supra*,

plaintiffs have failed to make the requisite showing that the record pertaining to the 2015 Rules

is incomplete.  And, discovery regarding the 2008 Labor-Certifications would be premature

before defendants submit the record pertaining to those regulations.

Second, plaintiffs have failed to make a "'strong showing of bad faith or improper

behavior'" that would warrant discovery. *Tafas*, 530 F. Supp. 2d at 797.  As noted, "Courts have

imposed a high standard on plaintiffs seeking to demonstrate bad faith." *Tafas*, 530 F. Supp. 2d

at 797. *See, e.g., Mar. Mgmt. v. United States,* 242 F.3d 1326, 1335 (11th Cir. 2001)(permitting

discovery after finding that the government had "purposefully withheld negative documents");

*Newton County Wildlife Ass'n v. Rogers,* 141 F.3d 803, 807–08 (8th Cir. 1998)(finding allegation

of bad faith "woefully inadequate to justify going outside the administrative record" where

plaintiff identified a discrepancy between the agency's conduct and its predecisional

assessments); *Mullins v. U.S. Dep't of Energy*, 50 F.3d 990, 993 (Fed. Cir. 1995)(finding no bad

faith absent a showing of "fraud or clear wrongdoing"); *United States v. Shaffer,* 11 F.3d 450, 460–61 (4th Cir.1993) (finding bad faith where agency employee filed fraudulent documents and "perjured himself repeatedly").

Here, there is no indication that defendants "purposefully withheld negative documents", *Mar. Mgmt. v. United States,* 242 F.3d at 1335, or committed any type of "fraud or clear wrongdoing…." *Mullins*, 50 F.3d at 993. Moreover, disagreement with an agency's ultimate decision, or with its interpretation of the factual materials before it does not constitute bad faith. *Sierra Club v. U.S. Army Corps of Engineers,* 701 F.2d 1011, 1044 (2d Cir.1983); *accord Tafas*, 5530 F. Supp. 2d. at 798.

Even if I ultimately conclude on the merits that defendants acted unlawfully by jointly issuing the 2015 Rules, that conclusion is not indicative of bad faith or improper behavior as to the record.  This is because a statutory or constitutional violation is indicative of misconduct only where it has *previously* been determined that the conduct in question is unlawful.  *See In re McCarthy*, 636 F. App'x 142, 144–45 (4th Cir. 2015) ("We see no clear misconduct in EPA's alleged failure to perform a duty that was not declared to be mandatory until the district court so declared in this case.[1]"); *Cf. Singer Sewing Machine Co.,* 329 F.2d 200, 205, 208 (4th Cir.1964) (finding misconduct where there was prima facie evidence that agency violated statute previously construed by multiple courts of appeals).  That is not the case here.

Moreover, in my view, defendants have in fact demonstrated good faith in their efforts to resolve the record disputes without resorting to time-consuming motion practice.  Although defendants failed to provide the Court with the record for the 2008 Labor-Certification Regulations, their failure to do so does not indicate bad faith.  Rather, it reflects an incorrect view that the record as to regulations did not need to be provided the Court because any claims

related to them are time-barred.  Notably, defendants offered to provide the record relevant to the 2008 Labor-Certification Regulations in an effort to resolve the outstanding record dispute (ECF 69 at 22-23; ECF 63 at 1), but plaintiffs rejected that request.

Finally, plaintiffs seem to misapprehend the nature of an APA case.  The questions raised by this case involve whether DOL and DHS had the authority, under the APA, INA, and Constitution, to issue joint regulations and whether DHS impermissibly delegated authority to DOL.   Assuming DHS has authority to structure the H-2B program as it has, including by designating DOL as a consultant and relying on DOL's expertise, the case poses the question of whether the challenged rules are an unreasonable exercise of that authority.  These questions can be resolved by looking to the relevant statutes, the Constitution, and the administrative record. Discovery is completely unnecessary.

As to plaintiffs' request for a privilege log (ECF 60-1 at 45), defendants argue that no privilege log is required for documents, such as deliberative materials, that are not properly part of the administrative record in the first place.  ECF 69 at 33.  Courts in this Circuit, as well as in other circuits, have agreed with defendants' position.  *See, e.g., Oceana, Inc.*, 634 F. Supp. 2d at 52 ("The law is clear: predecisional and deliberative documents 'are not part of the administrative record to begin with,' so they 'do not need to be logged as withheld from the administrative record.'") (quoting  *Nat'l Ass'n of Chain Drug Stores,* 631 F. Supp. 2d at 27); *Tafas*, 530 F. Supp. 2d at 801-02 (concluding that no privilege log is required for "internal emails, correspondence, summaries, and drafts" because they "are not properly part of the administrative record in the first place."); *Blue Ocean Inst. v. Gutierrez,* 503 F. Supp. 2d 366, 372–73 (D.D.C. 2007) (denying motion to compel completion of administrative record, finding that deliberative documents "are not a part of the administrative record when an agency decision

is challenged as arbitrary and capricious," and rejecting plaintiff's argument that agency must

assert deliberative process privilege).

As Judge Royce Lamberth has explained, *Nat'l Ass'n of Chain Drug Stores*, 631 F. Supp.

2d at 27:

> As pre-decisional, deliberative documents are immaterial to the court's decision, they are not designated part of the administrative record that forms the basis of the court's decision.
>
> Since deliberative documents are not part of the administrative record, an agency that withholds these privileged documents is not required to produce a privilege log to describe the documents that have been withheld.

The conclusions reached by these courts are "consistent with the two stated rationales for

excluding deliberative documents from the administrative record." *Great Am. Ins. Co. v. United*

*States*, No. 12 C 9718, 2013 WL 4506929, at *9 (N.D. Ill. Aug. 23, 2013). In *Great American*

*Insurance Company*, the court explained, *id.*:

> First, "judicial review of agency action should be based on an agency's stated justification, not the predecisional process that led up to the final, articulated decision." *Tafas,* 530 F.Supp.2d at 794 (internal quotations omitted). In addition, "[r]equiring the inclusion of deliberative materials in the administrative record would pressure agencies to conduct internal discussions with judicial review in mind, rendering 'agency proceedings ... useless both to the agency and to the courts.' " *Id.* (quoting *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n,* 789 F.2d 26, 44–45 (D.C.Cir.1986)). In this Court's view, requiring the United States to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA.

I agree with the reasoning cited above and conclude that no privilege log is required for

deliberative materials that are not properly part of the administrative record in the first instance.

Accordingly, plaintiffs' requests for discovery and for a privilege log shall be denied.

**IV.    Conclusion**

For the foregoing reasons, I shall GRANT in part and DENY in part plaintiffs' Motion to Supplement (ECF 60).   As discussed herein, defendants are required to produce the record pertaining to the 2008 Labor-Certification Regulations.   In all other respects, I shall deny the Motion.

A separate Order follows, consistent with this Memorandum Opinion.


Date: July 27, 2017                                              _____/s/_____
                                                                Ellen Lipton Hollander
                                                                United States District Judge